IN RE ILES
BIG HORN COUNTY v. ILES

(No. 2190; March 4, 1941; 110 Pac. (2d) 826)

444

For the plaintiff in error, the cause was submitted on the brief of *Thomas M. Hyde* of Basin.

For the defendant in error, there was a brief by *Milward L. Simpson* of Cody, and an oral argument by *Valentine R. Grundman* of Cody.

BLUME, Justice.

Walter F. Iles, about 43 years of age, hereinafter called the workman, was injured on August 16, 1937, while in the employ of Big Horn County, this state, by being struck in the small of the back by a heavy road bulldozer of a caterpillar, weighing from 3000 to 3500 pounds, which dropped some 16 inches while the employee was in a stooped position. He had what Dr. Parisi describes as a comminuted fracture of the inferior ramus of the left pubic bone, a comminuted fracture being one in which more than one piece of the bone is broken. This ramus, as explained by Dr. Gorder, is a part of the pelvic bone in front of the body and extends downward from what is called the symphysis—the joint in front. The bladder lies immediately behind the ramus. The workman was unconscious for part of several days. He was taken to the hospital, and X-ray pictures were taken at different times, during a period of about a month. He was taken to a hospital where he remained about a month. He remained under the care of Dr. Parisi until October, 1937, and thereafter was under the care of Dr. Gorder. The latter recommended that he go to Billings and be examined by Dr. Allard of that place. That physician made a report to the court on April 15, 1938, stating among other things that the movements of the spine in all directions are fairly free and normal through the first half of the arc of motion, after which the employee resists these movements both actively and passively. He continued: "X-ray pictures of the sacro-lumber and pelvic areas demonstrate an overgrowth on the right pubic ramus which tends to reach over the symphysis of the pubic bones and which is accompanied by what appears to be a slight separation of that joint,

with an elevation of the right pubic articular segment. There is an irregularity of the left ischium which may have been caused by a well healed fracture in that area. Diagnosis: Contusion and sprain in the sacro-iliac area, left, with a possible injury or separation of the symphysis pubis, the symphysis pubis being seemingly quite well healed at this time." Supplementing this report on May 27, 1938, he stated: "In cases of this kind there are two expectancies: one, that the subject will gradually improve even to a possible cessation of symptoms, in which case there is always a possibility of recurrence in some unguarded movement or action; the other, a continuance of the symptoms without sufficient abatement to permit return to hard work. In this instance I would expect gradual improvement, the limitation being undeterminable. Therefore, I feel that the average disability rating in these cases should pertain in this case; that is, a 30 per cent permanent partial disability."

On June 30, 1938, the court made its final award in the case, allowing the employee the sum of $1666.66, being for thirty three and one third per cent permanent partial disability. It does not appear that any testimony was introduced in the matter, and it seems that the award was made pursuant to the report of Dr. Allard, which, it may be noted, did not determine the amount of disability, but was conjectural as to what the future might show.

On March 16, 1940, within two years after the final award above mentioned was made, the workman filed a petition for modification of the order theretofore made, alleging that in truth and in fact he was, at the time the order was made, totally disabled, which condition will continue to exist, and further, that he has suffered an increase of incapacity, due solely to the injury received in August, 1937. The county filed an answer denying these allegations. A jury, composed

of citizens of the county, was empanelled to try the issues. On March 16, 1940, a verdict was returned that the workman's incapacity has increased 66⅔ per cent. A judgment was entered in accordance with the verdict finding the employee totally incapacitated, and making an allowance accordingly. From this judgment the county has appealed.

On June 23, 1939, many months prior to the trial of this case, Dr. Allard had re-examined the workman, and after reciting various symptoms of which the latter complained, the doctor reported that X-ray pictures "do not present any disturbance in bone or joint alignment, with the exception of an overgrowth on the right pubic ramus. This bony outcropping reaches over the symphysis on the right pubic bones. The right side of the pubic articulation is somewhat higher than the left, and the joint seems to be separated more than normal. Conclusions: The symptoms from which Mr. Iles is suffering evidently followed an injury on August 16, 1937. At that time the pelvis was disturbed by the force which caused the injury and likely is responsible for the abnormalities found in the pubic region and strain in the left sacro-iliac joint. In spite of the fact that one would ordinarily expect a minor disability from an injury of this type, as interpreted from X-ray findings, the subject symptomatically, according to his history, is unable to do hard work of any kind. He is therefore symptomatically a 60% disability from the standpoint of hard work, and anatomically a 30% disability." The workman testified that since the award in 1938, the pain in his back has become worse, and that he could not now control the left leg at all times and at times he has no feeling at all in it; that the pain in his back starts in at the top of the left hip, drifts through and crosses into the right hip; that the pains at times are unbearable; that he has lately had considerable bladder trouble; that he cannot

lie on his back for more than 30 minutes without pain; that his pains since the award in 1938 are worse and of longer duration; that he has not been able to procure employment since his accident; that he cannot do any hard work at all; and that he cannot get around without the help of a cane. The employee's wife testified to his pains; that he can do no work involving any strain whatever, and must constantly use a cane. Dr. Gorder testified that the workman can never, in his judgment, do any hard work again; that it is possible that his disability has increased since the award of 1938; that a dislocation of the symphysis has a tendency to disturb the bladder; that the X-ray cannot disclose that; that "there is a possibility over a period of time that he might get better, also that his disability would continue and remain stationary; also that he might become even more crippled than he is now."

■ It is the theory of Big Horn County, the employer, that the workman is malingering and that he has not shown that he is totally incapacitated. As to whether he was malingering could be better determined by the jury, whose interests it was to protect Big Horn County, who saw the workman on the witness stand, and some of whom, perhaps, were personally acquainted with him.

The test of total incapacity under our statute means "the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the workman from performing any work at any gainful occupation." Rev. St. 1931, Sec. 124-120 (b). See In re Hibler, 37 Wyo. 332, 261 Pac. 648. The case at bar would come, if at all, under the clause of "other conditions." It appears in the record that the workman was engaged, with some associates, in some oil exploration. That, of course, is purely speculative, does not require any physical work on the part of the workman, and cannot, accordingly, in the absence of

such work, be taken into consideration in determining the workman's incapacity. Kaiser v. C. & I. Co., 134 Pa. Super. Ct. 104, 4 A. (2d) 188; Hughes v. Kellog & Sons, 139 Pa. Super. Ct. 580, 13 A. (2d) 98. It further appears that the workman collected some due-bills at Basin. His testimony on that point is meager. He was asked on cross examination as follows: "I believe you said you worked here in the collection business for awhile?" He answered: "Oh, I did a little work for private individuals, kind of on a mutual agreement between ourselves. I attempted to make collections of old accounts and collected some." We suspect that on account of the limited population of Basin, where the workman lives, the matter is not of importance. If the amount realizable by the workman had been more than a comparative trifle, the county attorney would doubtless have gone into the matter more fully, and would not have contented himself with asking just one question. Under the circumstances appearing in the record, we are inclined to think that the statement of the Supreme Court of Colorado in New York Indemnity Co. v. Industrial Commission, 86 Colo. 364, 281 Pac. 740, should probably apply, namely:

"If one be totally and permanently disabled, he ought not to be penalized for obtaining some trivial and unusual employment, or have the door of hope and ambition slammed in his face by being forbidden, on pain of having a portion of his meager sustenance withheld, to make an effort to add thereto. One may be totally disabled for all practical purposes of competing for remunerative employment in any general field of human endeavor and yet be able to obtain occasional employment under rare conditions, and at small remuneration. The claimant's status remains unaffected thereby, unless the employment be specifically covered by a statutory exception."

We stated in Standard Oil Company v. Sullivan, 33 Wyo. 223, 237 Pac. 253, that "except in cases of permanent disability that are specifically described in the

statute, we believe that a total disability should not be declared to be permanent unless it appears pretty clearly that the affliction will not yield to treatment and that the workman will never be able to work at any gainful occupation."

There is substantial testimony in the case to justify the jury in finding that the workman will never be able to do any hard work again. That is the effect of the testimony of the workman, of his wife, of Dr. Gorder. Even Dr. Allard, who stated that the workman was, assuming his symptoms to be correct, incapacitated to the extent of 60%, agreed that the workman would never be able to do any hard work again. His percentage of 60% is evidently based on the theory that the workman would be able to get some light work. The latter was asked by the county attorney: "You can do clerical work?" The workman answered: "Limited to the extent of my ability and which is limited because I was not trained in that work." It appears that all his life he has been accustomed to do hard work. The theory of counsel for the employer appears to be that the workman must go further than to show that he cannot do any hard work; that he must also show that he cannot do light work. Of course, it would almost be impossible, in many instances, for a man educated only to do hard work, to show that at some time or other some good Samaritan might not turn up and offer him some light work which he might be able to do. The law does not require impossibilities. It is stated in 71 C. J. 1071 that "where it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee." In Lunardello v. Coal Co., 101 Mont. 94, 53 P. (2d) 87, 90, the court stated: "There is no merit, however, in the sug-

gestion that the burden was on plaintiff to prove not only that he could not work at his former occupation, but that he was totally incapacitated from obtaining remunerative employment of any kind. The general rule in this respect is stated in 71 C. J. 1071. * * * This, we think, is the proper rule. It is supported by the weight of authority." To the same effect as the foregoing authorities, and the authorities cited therein, are Jones v. Coal Co., 118 Pa. Super. Ct. 149, 179 Atl. 789; Cox v. Woodlands Cemetery Co., 133 Pa. Super. Ct. 313, 2 A. (2d) 565; Eastern S. S. Lines v. Monahan, 21 Fed. Supp. 535; Meyers v. Ind. Acc. Comm. (Cal. App.) 103 P. (2d) 1025.

The burden here mentioned has not been met in the case at bar. But aside from that, in order not to lose sight of what we stated in Standard Oil Company v. Sullivan, supra, we may add that two years and seven months intervened between the accident herein and the time of the trial. During that time, the workman has not been able to find any employment (aside from what we have mentioned). It would, accordingly, be purely conjectural, as to whether or not he would be able to find any employment of any kind within any reasonable time, or at all, assuming that he would be able to do some light work. It has been held in many cases that inability to find work due to labor conditions, or to the labor market, is no sufficient reason for allowance of any money under the compensation statutes (33 A. L. R. 123), but that rule, if it is sound, could hardly apply to a case such as is before us, in order to determine whether or not the court was justified in making a permanent award. The ability of the workman to find light work in the case at bar would not be great, if we consider that at the time of the trial here, millions of people were out of work. The jury doubtless considered that. We do not think we would be jus-

tified in interfering with the verdict on the point here under consideration.

■ It seems that the workman had, at the time of the petition filed herein, drawn the full amount of the award made to him on June 30, 1938. But the petition was filed within two years after that award had been made, and the claim herein is made pursuant to the provisions of section 124-113, Rev. St. 1931, as amended by c. 128, S. L. 1937, providing that "where an award of compensation has been made in favor of an injured employee, an application may be made to the court by either party at any time within two years from the date of the award or at any time during which monthly payments under an award are being made, for a modification of the amount of the award on the ground of increase or decrease of incapacity, due solely to the injury or upon the ground of mistake or fraud." While the workman in his petition pleaded that he was in truth and in fact totally incapacitated, he also pleaded that his incapacity has increased since the date of the award. The case was submitted to the jury solely upon the latter point, and a verdict was returned as already mentioned. The county attorney of Big Horn County contends that there is no substantial evidence in the record showing that the incapacity of the workman has increased since the award of June 30, 1938, particularly to the extent of 66⅔ per cent as found by the jury. The evidence is not strong. The workman in answer to the question as to whether or not his disability has increased since the award of June 30, 1938, answered: "Why the pain in my back has become worse, and my left side, my leg gets where I can't control it at all times. * * * It is inclined to get out of control in walking. I lift it up and it doesn't seem to track as it should, and sometimes it seems to lose feeling. * * I have had considerable bladder trouble for some time. I sometimes go for a week or two, my blad-

der feels like it was loaded, kind of solid weight and there's more or less pain and irritation. My discomfort is greater, longer duration since July, 1938." Dr. Gorder testified that "lately" he had heard the workman complain of bladder trouble, and of increased pains; that he cannot see any improvement in the workman's condition. "Q. Would you say the incapacity has increased any? A. Well, there is a possibility it has, yes." Dr. Allard, as already shown, stated that, assuming the symptoms which the workman gave him in fact existed, his incapacity would be 60 per cent. Part of these symptoms, however, existed from the beginning. That is substantially all of the testimony on the question of increased incapacity. We cannot say that some changes for the worse in the workman's physical conditions have not occurred since June 30, 1938. But there is no evidence that the changes consist of the percentage as found by the jury.

The cases are not in harmony as to what is meant by a change of condition, or—what comes to the same thing—an increased or decreased incapacity of the injured workman. The holding of a number of courts appears to be to the effect that if the workman's physical condition at the time when a change of award is sought, is substantially the same as it was at the time of the award which is sought to be modified, then there is no change in the condition—no increased incapacity —which warrants any change in the award. State ex rel. v. Haid, 332 Mo. 1061; 61 S. W. (2d) 950; Cirillo v. United Engineers and Constructors, 121 N. J. L. 511, 3 A. (2d) 596; Texas Co. v. Atkinson, 178 Okl. 480, 62 P. (2d) 1204; Bermay v. Chase Bag Co., 98 Ind. App. 175, 187 N. E. 679; Huff v. Omaha Cold Storage Co., 136 Nebr. 907, 287 N. W. 764; Goneriski v. Steel & Wire Co., 106 Conn. 1, 137 Atl. 26. See Midwest Refining Co. v. George, 41 Wyo. 55, 281 Pac. 1005.

Many other cases, especially from the same jurisdictions, might be added.

Other cases have adopted a rule more liberal toward the workman. In two late Michigan cases, while apparently not quite consistent with previous cases from that jurisdiction (see, e.g., Blust v. Brewing Co., 285 Mich. 103, 280 N. W. 126), it was held that if a tribunal has made an award for partial disability, but subsequently finds that there is in fact permanent disability, it has no right to hold that an additional award may not be made merely by reason of the fact that the permanent disability existed at the time when the first award was made. In Schinderle v. Ford Motor Co., 294 Mich. 449, 293 N. W. 713, the court stated:

"Plaintiff, an employee of defendant, was injured in December, 1934, and awarded compensation in July, 1935, for partial disability. In November, 1938, he petitioned for an award for total disability, was adjudged totally disabled but denied additional compensation on the ground that he was in fact totally disabled when adjudged partially disabled in 1935, and therefore, has not suffered further disability. The award for partial disability in 1935 is res judicata as of that time and the finding of the commission that he is now totally disabled established increased disability, commanding an award for such lessened ability, and the commission was without power to review and impeach its former award by holding that, when he was awarded compensation for partial disability, he was in fact totally disabled. * * * Plaintiff, defendant and the commission are bound by the finding and award for partial disability only in 1934, and the finding of total disability in 1938 entitled plaintiff to an award for such."

Zelinckas v. Ford Motor Co., 294 Mich. 494, 293 N. W. 522, is a similar case. The compensation commission found that there had not been a change of condition since the time of the previous award. The court said:

"Defendant appeals and contends that the department of labor and industry may not increase compensation payment upon an express finding of no change in the physical condition of the injured employee since a prior hearing. * * * Citation of authority is unnecessary to establish the principle that a finding of partial disability at a previous hearing cannot estop a future finding of total disability, since a man's physical condition is subject to change."

In Corvi v. Coal & Mining Co., 119 Kans. 244, 237 Pac. 1056, 1058, it was held that if a tribunal makes an award for disability upon the theory that it will cease by a time certain, and it develops subsequently that the physical condition of the workman did not improve, the tribunal should make an additional award. The court stated:

"What effect an injury will have on capacity to work is necessarily a matter of prediction in most cases. The arbitrator's prediction may not accord with the facts disclosed by lapse of time. Capacity may increase or may diminish beyond what the award contemplated, and compensation should be adjusted accordingly. Therefore, review and modification of the award are provided for at the instance of either employer or employee. A modified award is still likely to rest on predication and if the predication should prove to be wide of the truth, further adjustment to accord with the facts ought to be made. * * * In this instance, what was believed to be temporary disability, which would cease altogether by June, 1925, has been found to be permanent. While in one sense the disability has remained constant, it has increased in the sense that it will continue to the end of the period for which the statute allows compensation, three years longer than the district court last predicated. This being true, the court concludes that plaintiff's disability has increased within the meaning of the statute."

This meaning of the term "increased disability" was approved by the Supreme Court of Montana in Meznarich v. Republic Coal Co., 101 Mont. 78, 53 P. (2d) 82, where the court, after quoting from the Kansas

case above mentioned, stated that "in our opinion this is the correct interpretation to be given to the phrase 'upon the grounds that the disability of the person in whose favor such award was made has * * * increased.'" In Elsworth v. Industrial Commission, 290 Ill. 514, 125 N. E. 246, it appears that the workman made a settlement for his injuries, the settlement being approved by the Industrial Commission. He made the settlement under the misapprehension that his disability was temporary. It turned out to be permanent. So he applied for a modification of the award, which was granted and upheld by the Supreme Court under the provision of the law which provided that within a certain time the award might be modified on the ground of increase in disability.

An interesting case is Miller v. Indemnity Ins. Co., 55 Ga. App. 644, 190 S. E. 868, in which it was said:

"Where an employee has suffered a compensable injury from a broken leg, and his disability therefrom is total, but where it appears from the physical condition of the injury that there is a possibility of improvement and a reduction of the disability from total disability to a partial disability of 75% and where the department of Industrial Relations, in passing on the employee's claim for compensation awards a compensation for a 75 per cent disability, and where it afterwards appears from the claimant's physical condition resulting from the injury that the disability is total, and it appears from such condition that there is no possibility of a reduction in the disability, there is a change in condition from that in which the injury was total with a possibility of reduction of disability to that in which the injury is total with no possibility of reduction in the disability. An award afterwards made for a total disability on the ground of change in condition, where the evidence adduced on the hearing was as above indicated, which finds that the claimant has suffered a total disability and awards compensation for a 25% disability after allowing credit for the payment which had been made for a 75 per cent disability, is not contrary

to law and without evidence to support it on the ground that there has been no change in condition."

In Silver King Coal & Mining Co. v. Industrial Commission, 92 Utah 511, 69 P. (2d) 608, 610, the court stated:

"Where there are conditions which were not known and which could have revealed themselves only afterward, a new hearing may be had on the ground of change of condition. A change of condition may occur where there is an actual change or where the condition is different from what it was thought to be and only could have been revealed by subsequent events. This is because only the actual unfolding of events could reveal a condition different than that which the commission assumed to operate on. The condition of an applicant passed on by the commission is one which at the hearing was revealed or which, with reasonable investigation, could have been revealed and not one which, though existing, could not with reasonable examination have been known."

The case at bar falls within the spirit of all of the foregoing cases. At the time when the award of June 30, 1938, was made, the workman was, according to the evidence, in fact totally disabled. Whether it would be only temporary, or would develop into a total permanent or partially permanent disability, was not then known. It is apparent from the record that the court made that award pursuant to the report of Dr. Allard of May 27, 1938. That was, it seems, the only evidence before it. That report states two possibilities or expectancies—one that the workman would gradually improve; the other that he would not. The doctor said that he expected gradual improvement, the "limitation being undeterminable," and that the workman should be rated according to the "average." It must be clear that the court's award was based on the hope or expectancy that the workman's condition would improve, "the limitation being undeterminable." It would seem that an award made under such circumstances and

under such evidence could hardly be said to be on the same footing with an award made upon definite evidence, or upon conflicting evidence produced by the employer and workman.

A result similar to that reached by the foregoing cases under what we have termed the "liberal" rule, has been reached by other courts on the theory of mistake, and it may be noted that our statute provides, as do the statutes of some other states, that an award may be increased or decreased on the ground of mistake. In Moffat Coal Co. v. Podbelsk, 96 Colo. 355, 42 P. (2d) 1001, the facts appear in the opinion of the court, which in part is as follows:

"The statute provides that 'for error, mistake or change in conditions, the commission may at any time * * * review any award ending, diminishing, maintaining or increasing the compensation previously awarded.' C. L. 1921, Sec. 4484. The new evidence was to the effect that claimant's injury was more extensive than had appeared from the earlier inquiry, not that his condition had become worse, as the commission recited. We think, however, that while the commission could have employed more fortunate words, the import of its finding of September 12, 1934, is that from the beginning claimant's condition justified the extended award. The evidence warranted that determination, and the law authorized it. The procedure was apt. Rocky Mt. Fuel Company v. Canivez (Colo.) 40 P. (2d) 618."

It is not clear whether the court in this case considered the fact that there had been no improvement was a change in condition, or whether a mistake had been made in the first award. However, in Century Indemnity Co. v. Klipeel, 99 Colo. 213, 61 P. (2d) 842, 845, the court stated that "we can conceive of no clearer case of mistake than one in which the commission makes a finding of no permanent injury and denies compensation, when in fact a permanent injury has

been sustained which would entitle the claimant to compensation if the facts had been known, established and correctly acted upon." And in Employers Mutual Ins. Co. v. Jacoe, 102 Colo. 515, 81 P. (2d) 389, 390, the court said that under such circumstances it would make no difference whether there should be said to be a mistake or a change of condition. In the case of Commercial Standard Ins. Co. v. Shank, (Tex. Civ. App.) 140 S. W. 273, it appears that an award had been made for partial permanent incapacity to the extent of 30 per cent. No appeal was taken from this award. A subsequent hearing, before a jury, resulted in a finding of permanent partial disability to the extent of 50%. The jury found specially that the workman, the doctor who originally examined him and reported thereon, and the insurer were all mistaken as to the nature and extent of the injury. The court, in upholding the amended award, stated in part, in connection with a mistake in the former award:

"On the other hand, it is clear, we think, that this term in the statute was intended to authorize a review by the board of a mistake of fact as to the actual injuries received, whether made by the employee, the insurer, or the board itself, irrespective of, or independent of, any issue of fraud. The purpose of the compensation act was to provide adequate compensation for injured employees, within the limits fixed by the act commensurate with the incapacity caused by the actual injuries received. And it was the manifest purpose of section 12d to authorize the board, in administering the act, and to effectuate its purpose, to correct mistakes made without fault of any party, and in the light of the true facts."

In the case of Kurzaji v. Warner & Bowman, 106 Conn. 90, 137 Atl. 19, the compensation commissioner had made an award of 85 per cent disability in the workman's vision. He later discovered that impairment was in fact greater, and hence increased the award. The Connecticut statute did not specifically

provide, as does our statute, that an award would be corrected for a mistake, but made a provision similar in effect, namely, that the commissioner should have the power to modify an award as any court of the state has to open and modify a judgment of such court. The court in upholding the modification of the award made as above mentioned stated that "leaving the award as first made by the commissioner would perpetuate a glaring and serious injustice. When a court discovers that it has made a serious mistake as to a question of fact through mere inadvertence, it may undo the injustice by opening the judgment and then rendering its judgment in conformity to the facts whose true significance or casualty it had failed to understand." The language was approved in Wysocki v. Bradley and Hubbard Co., 133 Conn. 170, 154 Atl. 431, 432. See also State ex rel. v. District court, 134 Minn. 89, 158 N. W. 825.

In the case at bar, the workman did not, in so many words, plead that there was a mistake in the award of June 30, 1938. He pleaded, however, that he was in truth and in fact, totally disabled at that time. Construing the pleading liberally, we may gather from this that he asserted that there was a mistake in the award. That point was not submitted to the jury for determination. Judging by the evidence, however, we think it is clear that the jury must have based their verdict mainly on the fact that the injury was greater on June 30, 1938, than the court had found.

We do not decide that an award for permanent partial disability is never final. We leave that question open. But in this case there was a showing that the condition of the workman was worse at the time of the trial than it was at the time when the award of June 30, 1938, was made, although the percentage of increase of disability was not shown. Further, it is clear that the court's award of that date was made

merely in the hope and expectancy that the award made might, in the future, prove to be sufficient. The hope and expectancy proved to be vain. We think, accordingly, that, under the special facts in this case, we should not disturb the judgment herein.

■ During the course of the trial, Dr. Parisi was examined as a witness for the employer. He had the workman in charge immediately after the injury occurred and for about two months thereafter. He did not know the actual condition of the workman at the time of the trial, and questions asked him in regard thereto were not permitted to be answered. The attorney for the employer thereupon asked that Dr. Parisi be permitted to examine the workman then. The court stated that he should have asked to have that done previously, and that it was too late to ask it while the case was on trial. Error is assigned for this action of the court. The statute provides that "in any proceeding before a court or judge as aforesaid, the court or judge shall have authority to appoint a duly qualified impartial physician to examine the injured employe and give testimony. * * * The employer or employe may, at his own expense, also appoint a qualified physician, who may attend and be present at any such examination of an injured employee and give testimony at such hearing or investigation." Sec. 124-113, Rev. St. 1931. It has been said that "if the application is not made until after the close of the plaintiff's evidence, and no reason is shown for the delay in making the application it will not be error to refuse the order." 14 R. C. L. 719. However, the mere fact that the request is made during the trial should not always be controlling. 14 R. C. L. 719; see Ingram v. Mut. Ins. Co., 62 Ga. App. 789, 10 S. E. (2d) 99, and cases cited. And the statute should be liberally applied in view of the fact that a contest under the compensation laws does not merely affect the immediate parties thereto,

but often, if not usually, the compensation fund of the state as a whole. However, in this case, the county attorney did not ask for the appointment of an impartial physician. He asked for the examination on the part of Dr. Parisi. He was not impartial. He had previously written a letter to the effect that the workman was a malingerer. Under the circumstances we do not believe that the court abused its discretion.

The judgment is accordingly affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.