James GIFFORD, Appellant (Claimant-Employee below),

v.

COOK–McCANN CONCRETE, INC., Appellee (Employer below).

No. 4376.

Supreme Court of Wyoming.

Oct. 8, 1974.

chest X-rays resulted in a diagnosis of left pneumothorax (collapsed lung) due to a ruptured bleb of pulmonary emphysema.' " Claimant, after receiving some treatment in the hospital, returned home but was later readmitted and submitted to surgery. Temporary total workmen's compensation benefits, as well as medical expenses, were paid to him until the entering of the order from which the present appeal is taken. That order was the result of an objection by the employer, the hearing on which was held November 8, 1973. The only medical evidence was that of the attending physician, who on direct examination testified that claimant was 100 percent disabled as far as cement finishing or other heavy physical labor was concerned but was not disabled to perform sedentary work. No other witness testified concerning the extent of the disability, and of course, resolution of the percentage to which the claimant was entitled required amplification or correlation of the factors which the witness had mentioned. Little was done in this regard by counsel, and the court during the latter part of the testimony undertook to elicit from the doctor an estimate about the disability of the claimant as "a whole man." The doctor responded that he did not understand the meaning of the question. There followed considerable colloquy during which he testified, "until such time as he is trained and undertaking work of the type I have described [sedentary or mental], I would estimate his disability as a whole man at seventy-five to eighty percent." After further discussion the witness said, "Judge, I just don't understand the statutes relative to disability for heavy labor vs. disability for sedentary work well enough if there are such statutes."

The doctor testified that the underlying condition inflicting the claimant was pulmonary emphysema; that the heavy work he was doing on August 11 resulted in rupture of a bleb on his left lung and its collapse. The lung was reexpanded but subsequently there was a recurrence of the same symptoms, and it was determined that

Edward L. Grant of Osborn & Grant, Cheyenne, for appellant.

Franklin J. Smith of Pattno & Smith, Cheyenne, for appellee.

Before PARKER, C. J., and GUTHRIE and McCLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

James L. Gifford, a cement finisher for Cook-McCann, while helping to level cement on August 11, 1972, became breathless and dizzy but, limiting his activities, stayed on his job the remainder of the day. The next day he contacted a physician, who later testified: " 'Examination and

he should have surgery with the hope of being able to remove the bleb so that it did not rupture in the future. At the time of surgery, it was found that the entire lung was covered by multiple blebs so that their removal would have resulted in essentially a removal of the entire lung. All the surgeon was able to do was to scarify or roughen the inner and outer pleura so that the lung wall would adhere tightly to the chest wall and thus not permit the lung to collapse. The witness said he could only estimate how long the claimant had had pulmonary emphysema before the injury, that pulmonary emphysema is a slowly progressive disease that takes many years to acquire, and that almost always in such cases there is a history of many years of heavy cigarette smoking, Mr. Gifford having smoked from one and a half to two packs of cigarettes for twenty-five years until he quit smoking in 1970. The doctor further testified that a return to physical labor would increase the chances of a recurrence of a collapse—more likely on the right than the left lung because of the surgical procedure on the latter. Hence, it would appear that his estimate of Mr. Gifford's disability was not based merely on the injury suffered August 11.

Approximately a month after the hearing the court wrote a letter to counsel stating, "Gifford is permanently disabled, with a 75% disability. He is entitled to compensation accordingly, equivalent to the loss of a hand.[1] Sec. 27–80(h) [W.S.1957, 1973 Cum.Supp.]. The employee's counsel will prepare an Order accordingly. Employee can do sedentary work * * *." When the order was presented by counsel, the court in handwriting interlined the drafted order so that it read:

"IT IS FURTHER ORDERED that the Employee receive permanent-partial disability benefits in an amount equal to *75% of* that provided for the loss of a hand under Section 27–80(h), Wyoming Statutes, 1957 ($6600.00), *$4,950.00.*" (Emphasis indicates words interlined by the court.)

■ From an analysis of the record, certain serious anomalies are evident. There was an absence of substantial evidence to support the result arrived at in the decision letter, and the only apparent basis for the court's statement was the somewhat forced speculation by the doctor concerning a subject which he was free to say was not within his expertise or direct knowledge. There was no substantial evidence to support the order entered by the court nor any explanation for its departure from the determination which had been expressed in the decision letter.

■■ The burden is upon the claimant to show that he is entitled to an award of compensation. Black Watch Farms v. Baldwin, Wyo., 474 P.2d 297, 298; Jennings v. C. M. & W. Drilling Company, 77 Wyo. 69, 307 P.2d 122, 123–124. Here, although there was not substantial evidence to support the order entered, claimant did present evidence of *some* disability. If that disability were attributable to the work injury and was total so far as hard or manual work was concerned but he could do light or mental work, the burden was upon the employer to show that such special work was available. Big Horn County v. Iles, 56 Wyo. 443, 110 P.2d 826, 829. The proof of both parties was unsatisfactory and justice requires remand.

Reversed and remanded.

---

1. "* * * For any permanent partial disability * * * the workman shall receive an award as follows: * * * For the loss of a hand ......$6,600.00." Section 27–80(a), W.S.1957, 1973 Cum.Supp.