Argued October 27, reversed December 20, 1976, reconsideration denied
January 19, review denied March 15, 1977

HAINES, *Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND, *Appellant.*

(No. 36669, CA 6755)

558 P2d 367

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Richard T. Kropp,* Albany, argued the cause for respondent. With him on the brief was Emmons, Kyle, Kropp & Kryger, Albany.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

In this workmen's compensation case, the State Accident Insurance Fund (SAIF) appeals the circuit court's award of compensation for permanent total disability based on the odd-lot doctrine. We reverse and reinstate the order of the Workmen's Compensation Board.

On April 20, 1967 while working as a tree faller, claimant suffered a compensable injury—a fracture of the tibia and fibula of his left leg when he was struck by a log. In September 1968 a final order was entered awarding claimant 22 degrees for partial loss of the left leg. Claimant continued to have instability in his left leg and abandoned logging and commenced "picking brush"[1] in 1969.

In 1971 claimant fell while picking brush and injured his back. At the request of his physician, Robert Fry, M.D., his initial claim was reopened and back surgery was performed. Subsequent to the surgery, claimant's back improved but his leg difficulties remained, so an osteotomy of the left tibia and fibula was performed and a compression plate was applied to the left tibia. Claimant has not worked since 1972 and at the time of the hearing, June 17, 1975, was receiving monthly tax free benefits totalling approximately $537.

In 1973 claimant was referred to the Disability Prevention Division (DPD) which found claimant's prognosis for vocational rehabilitation "somewhat guarded." Claimant told DPD at that time that his left leg below the knee was "numb" and "hurts all the time." DPD offered their vocational rehabilitation

---

[1] Claimant testified on direct examination as follows:

"Q. Perhaps some people aren't familiar with the technique involved in brush picking. Can you explain what that involves?

"A. Well, you go out,—you have to buy a lease from the government. You've got your own lease to * * * pick on. You pick sallow, and huckleberry, and fern, for greenery for funerals, and big parties, for decoration and stuff. * * *"

services but claimant was not cooperative so he was therefore found ineligible April 22, 1974.

On March 20, 1974 claimant's initial claim was again closed and he was awarded 57.6 degrees for 30 per cent unscheduled disability resulting from injury to his low back and an additional 11 degrees for 10 per cent loss of his left leg with which award claimant was dissatisfied.[2]

Following a hearing, the referee summarized claimant's condition as follows:

"Presently, claimant has numbness on the outside of the left leg from just below the knee to the ankle and across the top of the foot. Claimant walks on the outside of the foot and rolls it over in the process. He has limited range of motion with restricted flexion and extension. The ankle swells and discomfort is aggravated by prolonged standing or walking, especially on hard or uneven surfaces. He has constant pain in the ankle and as a result of the numbness, bowing of the tibia and limitation of motion, has lost substantial stability and agility. He will on occasion fall when the ankle gives way, which occurs about four times a month.

"Claimant has a constant dull pain in his back with occasional radiation into the legs. He is bothered by bending, stooping, twisting, lifting and carrying. He can lift 20 pounds, he tried and could not carry a 32-pound box of presto logs. He is severely bothered by prolonged sitting and can drive comfortably for about one-quarter of an hour."

At the hearing, Mr. Adolph, a vocational expert and psychologist, testified that in his opinion there was no suitable light sedentary work available for claimant in Lincoln County or in the extended region. He also gave claimant a "one out of ten" rating for motivation to seek work.

---

[2]The referee has set compensation at 66 degrees (of a possible 110) for loss of use of the left leg and 105.6 degrees (of a possible 192) for unscheduled low back disability. The Board increased the award for the low back disability to 144 degrees.

Another psychologist, Dr. Hickman, who examined claimant on June 24, 1975, wrote:

"In a previous report, we raised the question concerning this patient's motivation to return to work. It is now very clear that his lack of motivation is related to his feeling that he is physically incapable of doing any heavy work, and to his skepticism regarding the possibility of finding any type of suitable employment for him. He seemed rather willing to consider anything which could be proposed which would be realistic. At this point, one central question seemed to emerge in my own thinking, as I explored all reasonable possibilities with this patient. If this man can be returned to work, why hasn't someone, or some agency, helped him to do so? It is understandable that this man should be very concerned about his vocational future as long as he sees no hope of returning to work.

"* * * * *

"* * * Gradually, he became more and more angry, hostile, and bitter, and finally gave up. In effect, *he adjusted to his misfortune and accepted it. Now, he does not wish to disturb his adjustment* as he is afraid to hope. He can be persuaded to hope, if at all, only by being convinced that some opportunity does exist for him to work, and that every possible means will be employed to help him become vocationally reestablished. Until such time as he can be convinced that something can be done for him, he will find it virtually impossible to think of anything except permanent total disability as the only way which he can see of dealing with his problem." (Emphasis supplied.)

Samuel Scheinberg, M.D., who had examined claimant had no recommendations for further treatment of claimant's left leg except the addition of a "heel wedge" to his shoe.

In *Deaton v. SAIF,* 13 Or App 298, 304-05, 509 P2d 1215 (1973), we considered the "odd-lot" doctrine and said:

"* * * motivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves

[ 797 ]

support the claimed inability to work, and * * * evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant."

In the instant case claimant did not avail himself of the vocational rehabilitation services offered by DPD; Dr. Arnold gave him a very low motivation rating; Dr. Hickman attributed claimant's low motivation to the fact that he had become "adjusted to his misfortune" and did "not wish to disturb his adjustment."

Our de novo review of the record convinces us, as it did the hearing officer who saw and heard the claimant, that claimant is capable of light work and he has not demonstrated genuine motivation to find such work and therefore has failed to carry his burden of proving odd-lot status. *Deaton v. SAIF, supra.* This is not a case where the medical facts show that claimant is unable to work at any suitable gainful employment such as would make motivation immaterial. The burden is on the claimant to show that he has made a bona fide effort to find the suitable work where, as in this case, the injuries were only moderately severe. Unless reasonable effort is demonstrated by an injured workman to vocationally rehabilitate himself, the motivation requirement for odd-lot status has not been met. This, claimant has not done.

We find that the award made by the Board was adequate.

Reversed.