**In the Matter of the Claim for Worker's Compensation.**

**Milton D. SCHEPANOVICH, Appellant (Employee-Claimant),**

v.

**UNITED STATES STEEL CORPORATION, Appellee (Employer-Respondent).**

**No. 83–28.**

Supreme Court of Wyoming.

Sept. 14, 1983.

Bradley L. Booke, Jackson, for appellant.

Catherine L. Dirck of Johnson, MacPherson & Noecker, Rawlins, for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE, and BROWN, JJ.

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

THOMAS, Justice.

The question brought before the court in this case calls in its resolution for a refinement of the rule relating to the shifting of the burden of proof from an employee to an employer under the "odd-lot doctrine" in a worker's compensation case. The district court held that the employee had failed to sustain his burden of proof in this instance. In effect this was a holding that the burden of proof was not shifted to the employer. We are in accord with this ruling by the district court, and we shall affirm the judgment.

The parties have agreed that the issue in the case is appropriately stated in the brief of the appellant. It there is set forth as follows:

"Did the Trial Court err in finding that Appellant failed to sustain his burden of proof in establishing his permanent total disability as defined by W.S. § 27–12–405(a)?"

Section 27–12–405(a), W.S.1977, is a definition of permanent total disability, and reads as follows:

"(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training."

As will appear from the facts, the claim of appellant that he is totally disabled is presented under the phrase relating to "other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training."

In our opinion in *Cardin v. Morrison-Knudsen,* Wyo., 603 P.2d 862 (1979), this court adopted a definition of the "odd-lot doctrine" as follows:

" * * * The 'odd-lot doctrine' is described in 2 Larson, Law of Workmen's Compensation, § 57.51 at p. 10–109 (1976), as providing that permanent total disability " 'may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market.' " 603 P.2d at 863–864.

An injured workman who comes within the "odd-lot doctrine" need not show that he is totally incapable of doing any work at all in order to be entitled to an award for permanent total disability. *E.R. Moore Co. v. Industrial Commission,* 71 Ill.2d 353, 17 Ill. Dec. 207, 376 N.E.2d 206 (1978); *Wilson v. Weyerhaeuser Company,* 30 Or.App. 403, 567 P.2d 567 (1977); and 2 Larson, Workmen's Compensation Law, § 57.51, at 10–164.21 (1982). This court has stated the proposition in this fashion:

" * * * The theory of counsel for the employer appears to be that the workman must go further than to show that he cannot do any hard work; that he must also show that he cannot do light work. Of course, it would almost be impossible, in many instances, for a man educated only to do hard work, to show that at some time or other some good Samaritan might not turn up and offer him some light work which he might be able to do. The law does not require impossibilities. It is stated in 71 C.J. 1071 that 'where it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee.' * * * " *In re Iles,* 56 Wyo. 443, 452, 110 P.2d 826 (1941).

In this case the appellant contends that the district court erred in holding that he had failed to sustain his burden of proof on the issue of total disability as defined by § 27–12–405(a), W.S.1977. He argues vigorously that the uncontradicted and unimpeached testimony in the record establishes that he is permanently incapacitated from performing any work at any gainful occupation for which he was reasonably suited by experience and training. His position is that the appellee, his employer, United States Steel Corporation, failed to present any evidence that some special work of a

light or sedentary nature was available to him so that he could not qualify as a permanently disabled worker under the "odd-lot doctrine."

The appellant was injured on June 3, 1976, when he stepped off a Caterpillar tractor onto a bolt and twisted his right knee. His injury originally was diagnosed as a sprained knee, and he was treated with a brace and painkillers. On November 8, 1976, however, the appellant's injury was rediagnosed as a torn medial cartilage by the orthopedic surgeon who testified at the hearing on appellant's application for permanent total disability. This condition failed to respond to treatment in an adequate manner, and on August 11, 1977, surgery was performed to remove the torn meniscus. In the course of this surgery the appellant also was found to be suffering from severe degenerative arthritis.

This condition was reported to the court by a letter dated August 11, 1978, from the physician, and it contained the doctor's opinion that this condition had progressed to the point that appellant physically was unable to perform his current occupation. The doctor stated:

"I feel he should be medically retired from his current job, and feel he is totally disabled for this type of work. I would say he is 50% disabled for any type of employment."

Upon inquiry by the clerk of court, the physician redefined the disability from the degenerative arthritis as being post-traumatic in nature, and he then gave his opinion that the appellant's right leg was 50 percent disabled.

Acting upon this information, the appellant filed a claim for a 50 percent permanent partial disability of the right leg on August 28, 1978. This claim was acquiesced in by the employer, and it was awarded by the court on September 14, 1978. The following day appellant was medically retired

by the appellee over his protests. He testified that he was told by representatives of the appellee that he was permanently totally disabled. On October 4, 1978, the appellant then applied for an award of permanent total disability, and this application was disapproved by the employer on October 12, 1978. Nothing further happened with respect to this application for an award of permanent total disability until February 9, 1982, when the appellant petitioned the court for a hearing on his application.[1]

After the appellant requested the hearing, the appellee moved for an order granting it the right to have the employee examined by a physician of its choice in accordance with § 27–12–611(a), W.S.1977, and Rule 35, W.R.C.P. At the same time the employer filed a Petition of Protest to the claim for permanent total disability. Then, on May 6, 1982, the appellant by motion requested that the court enter an order declaring that he was 100 percent permanently totally disabled, and he requested that attorneys fees be awarded which were incurred by him in endeavoring to collect his disability benefits. He also renewed his request for a hearing on the matter by a separate motion filed on the same day. The case was set for hearing on July 6, 1982.

The only testimony in the record came from the orthopedic surgeon who had performed the knee surgery in 1977 and the appellant. The doctor testified with respect to his diagnosis and treatment of the appellant's injury. He explained to the court that the appellant was suffering from severe degenerative post-traumatic arthritis at the time he had written his August 11, 1978, letter to the court. He said it was his opinion that the arthritic condition predated the work-related injury, but that the trauma associated with the accident accelerated the progression of the disease. He testified that persons in the appellant's condition would have specific problems with the types

---

1. The appellant has not urged as error the failure of the district court to set the matter for hearing at the earliest possible date as required by statute. See § 27–12–602(a), W.S.1977; and *Herring v. Welltech, Inc.*, Wyo., 660 P.2d 361 (1982). The record does reflect, however, that additional benefits were applied for and approved after the employer disapproved the appellant's application for an award of permanent total disability.

of activities, such as standing for long hours, climbing up on machinery, lifting heavy objects, and the like, which are required of diesel mechanics and manual laborers. His conclusion was that it would be almost an impossibility for one in the appellant's situation to carry out his required duties at work as a result of the condition of his knee. During cross-examination, the doctor did agree that given adequate training and ability a person in the appellant's condition was capable of other work of a light or sedentary nature. Inquiry from the court disclosed that the appellant suffered from degenerative arthritis in both knees. The doctor stated that both knees clinically appeared to be in approximately the same state of degeneration as a result of the arthritis. He agreed with a conclusional statement of the court that whatever acceleration occurred with respect to the condition of the right knee as a result of the accident in 1976 was not a significant factor with respect to the condition of that knee at the time of hearing.

The appellant testified that he attended high school in Thermopolis through the eleventh grade, when he went into the Air Force. In the armed services he worked as an automotive truck mechanic. Upon his discharge from the armed forces he worked in the oil fields, moving up from the job of floorhand to the position of driller. He began to work for the appellee as a diesel mechanic in 1964, and he held that position until his disability retirement in 1978. The appellant said that prior to the injury on June 3, 1976, he never experienced any problems with his knees at any time. He had been able to conduct his usual work and activities without any pain or difficulty. He then described how the accident occurred resulting in the injury to his knee, and the effect of that injury upon his ability to perform the job. Before he was operated upon the primary effect was a great deal of pain for which he was taking daily medication. After the operation, his condition worsened, and it became increasingly difficult for him to do the kinds of activities which his job required.

Following the injury and the award of the permanent partial disability, the appellant was not offered any position which was less physically demanding by the appellee. He was rejected for vocational rehabilitation because of his age, past employment, physical condition, and the length of time the retraining required. The record demonstrates that from the time of his injury until his retirement the appellant continued to work as a diesel mechanic except for approximately three months during which he was undergoing therapy following the operation. The appellant had experienced no difficulty with his left knee until about a year prior to the hearing on his permanent total disability claim. Perhaps critical to the disposition of this case is his testimony on redirect examination:

"Q. Go looking for any other job?

"A. No, because I knew I couldn't do anything. I couldn't make a 'hand' out of it."

After receiving arguments by counsel for the parties, the district court made findings and conclusions orally. At that time the court first noted that it would be necessary for the appellant, after the award of the permanent partial disability had been adjudicated, to show a change or a fraud or an overreaching of some type in order to later claim the permanent total disability. The court rejected the evidence that the employer had retired him following the award as not convincing on any of the issues, pointing out that given the comments of the physician the employer would almost be compelled to retire him. The court stated that the appellant is a qualified artisan, a highly skilled person, and a decent mechanic. The court stated that the fact that he was unable to apply that skill working in the company shop on the repair of equipment which it used from day to day did not mean that he was incapable of applying his training and skills. The court also commented that the simple fact that because of education and experience the appellant had a greater skill than most other people who have not had a higher education did not mean that he was not reasonably suited by experience and training for the perform-

ance of work involving lesser skills. The court also pointed out that the record fell short of demonstrating that the disabilities were the result of the industrial injury. In this latter regard the court noted that the disability resulted from a condition which the appellant would have if he had not suffered any industrial injury.

The adjudicative portion of the Order which was entered in the record by the court is perhaps more definitive with respect to the issue as presented by the parties. It there is provided as follows:

"The employee, Milton D. Schepanovich, failed to present evidence that factually sustained the burden of proof required in order to establish permanent total disability under § 27–12–405(a) W.S. (1977 Repub. Ed.), in that the employee is a highly skilled mechanic and possesses skills by education and training, all of which could be applied by him, and in fact is applied by him from time to time, gainfully—

"THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"That the employee has failed to sustain the burden of proof that he is permanently totally disabled as defined in § 27–12–405(a), W.S. (1977 Repub. Ed.)."

■ It is to this record that we apply the rules with respect to burden of proof in the context of the "odd-lot doctrine." The burden of proof initially is assigned to the injured workman who is seeking to qualify as permanently totally disabled under the "odd-lot doctrine" to demonstrate that he is incapacitated "from performing any work at any gainful occupation for which he is reasonably suited by experience and training." Section 27–12–405(a), W.S.1977; *Cardin v. Morrison-Knudsen*, supra. The test to be invoked is whether the workman is so disabled that the services which he is reasonably equipped to perform by his experience and training are not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment. See 2 Larson, Workmen's Compensation Law, § 57.51 (1982). If that showing is

made, the burden of proof is then shifted to the employer to show that light work of a special nature which the employee could perform but which is not generally available in fact is available to the employee. *In re Iles*, supra; *Cardin v. Morrison-Knudsen*, supra.

■ It is true that in this case the appellant presented uncontradicted evidence that he no longer could perform the tasks required in his employment as a diesel mechanic and manual laborer because of the degenerative arthritic condition in his right knee resulting from the injury. A showing that the injured workman no longer can work in his current employment is not adequate to demonstrate that there is no suitable employment available for which the workman reasonably is suited by experience and training. We adopt the following rule formulated in 2 Larson, Workmen's Compensation Law, § 57.61, at 10–164.95 to 1–164.114 (1982):

" * * * If the evidence of degree of obvious physical impairment, coupled with other facts such as the claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available. * * *

"The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on him to establish unavailability of work to a person in his circumstances, which normally would require a showing that he has made reasonable efforts to secure suitable employment. * * * *"

Other jurisdictions in this context have held that an employee in circumstances similar to those of the appellant must show that reasonable efforts have been made to obtain suitable employment in order to meet their burden of proof and shift the burden of proof to the employer. *Wiedmaier v. Industrial Commission,* 121 Ariz. 127, 589 P.2d 1 (1978); *Oliver v. Wyandotte Industries Corporation,* Me., 360 A.2d 144 (1976); *Marez v. Kerr-McGee Nuclear Corporation,* 93 N.M. 9, 597 P.2d 1178 (1978) (Sutin, J., specially concurring); *Haines v. State Accident Insurance Fund,* 27 Or.App. 793, 558 P.2d 367 (1976); *Shealy v. Algernon Blair, Inc.,* 250 S.C. 106, 156 S.E.2d 646 (1967). See also cases cited in 2 Larson, Workmen's Compensation Law, § 57.61 at 10–164.114, n. 29 (1982).

█ In the instant case the appellant presented evidence that his employer did not offer him employment in a position which he was physically able to fill. He also demonstrated that the Worker's Compensation Division of the Office of the State Treasurer withdrew his referral to vocational rehabilitation based upon his age, past employment, physical condition and the length of time it took to train him. He testified himself that he had not sought other employment because of his subjective determination that he could not do the work. He did not present evidence that he was so disabled by virtue of his injuries that any such efforts would have been futile. While the refusal by the workman's employer to continue his employment in a suitable position is strong evidence that the employer considered him to be incapacitated, see 2 Larson, Workmen's Compensation Law, § 57.61 at 10–164.90 (1982), this does not mandate a finding by the district court of permanent total disability where there is conflicting evidence, as in the present case. Certainly we are unable to say that the ruling of the district court was without a rational basis in the record.

█ A conclusion that the evidence of degree of obvious physical impairment, coupled with other facts such as the claimant's mental capacity, education, training, or age, places claimant prima facie in that situation in which he was incapacitated from performing any work at any gainful occupation for which he is reasonably suited by experience and training depends upon a factual determination. In the context of our review, the applicable rule then is that if there is substantial evidence to support the factual determination by the trial court this court will not invade the province of the trier of fact by reaching a different conclusion on appeal. *Matter of Creek,* Wyo., 657 P.2d 353 (1983); *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977); and *Rocky Mountain Tank & Steel Co. v. Rager,* Wyo., 423 P.2d 645 (1967). The trial judge in this case made the following oral findings at the conclusion of the trial:

"Factually, I am not able to find that he sustained his burden; otherwise, the claim just seems to ignore several of the legal propositions which are essentially involved and reduce the argumentation to that over simplification which does have an emotional aspect to it: 'If I am not one hundred percent disabled, why did they fire me?' Over simplification, however argumentatively it might be persuading to him does not meet the obligation or the showing that he was so disabled as to be unable to do other work for which he is reasonably suited by experience or training. For example, he is a qualified artisan—counsel did say manual laborer and the Court doesn't find that to be the fact at all—he is a highly skilled person, a diesel mechanic. He has the skill that even I envy for myself, and he has a skill which is in demand; and merely because he is unable to apply that skill working for this company shop on the repair of equipment which is in use from day to day and time and time, working on heavy equipment that involves the removal of the pieces and parts and things such as that, doesn't mean at all that he is not capable of applying his training or skills. And merely because by education and experience he has that greater skill than most any other people have who haven't had higher education doesn't

mean that he is not reasonably suited by experience and training for the performing of work which involves lesser skills. "There is nothing in the statutes that says, for example, if I as a district judge, that I am traveling, if I happened to be injured while I am traveling, this statute doesn't mean that therefore since I am not able to be a judge any more, therefore I am totally disabled. I would have to look at all the lesser skills that I have accumulated during a lifetime, and there are literally dozens and dozens of employments which are included in that. Many of which, I am sure, that Mr. Schepanovich could perform were he motivated to do so."

The evidence in this record is sufficient to support the factual determinations encompassed in the remarks of the court leading to the conclusion that the appellant had not placed himself prima facie in the odd-lot category in order to shift to the appellee the burden of demonstrating the availability of light work of a special nature.

■ We affirm the conclusion of the district court that the appellant failed to meet his burden of proof as outlined in *In re Iles,* supra, and *Cardin v. Morrison-Knudsen,* supra, sufficiently to shift the burden of proof to his employer under the "odd-lot doctrine." Specifically we hold that in an instance such as this in which the attending physician testifies that his diagnosis is a 50 percent disability of one leg, even though he opines that the injured workman cannot continue in his previous employment, the burden is upon the workman to show efforts to obtain suitable employment which are reasonable under the circumstances. This the appellant did not do in this case.

■ While it is not necessary to our disposition, we find that the matter of applications for modifications is troublesome in worker's compensation cases. Having achieved the award of a permanent partial disability, the appellant was applying for additional benefits, i.e., the permanent total disability award, pursuant to § 27–12–606, W.S.1977. By virtue of the statutory language, such an application is submitted "on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud." Reference earlier was made to the oral findings of the district court with respect to this proposition. Our view of the record is that the physician testified that the incapacity of the appellant was the same when he applied for the modification of the amount of his award as it had been when the award of permanent partial disability was made. Furthermore, the record is susceptible to the interpretation that the physician testified that his condition also was the same at the time of the hearing, and no contention was made of either mistake or fraud. Consequently, if it had been necessary, it is our view that the judgment of the district court could have been upheld upon the ground that the appellant did not qualify under the statute to seek a modification of the amount of his award.

The judgment of the district court is affirmed.

ROSE, Justice, dissenting.

I do not disagree with the majority's statement of the odd-lot doctrine, nor with the test they apply:

" * * * [W]hether the workman is so disabled that the services which he is reasonably equipped to perform by his experience and training are not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income * * *." 669 P.2d at 528.

I do, however, disagree with the majority's application of this doctrine to the facts of this case.

The question in this case is whether the employee has met his burden of proving that he falls within the odd-lot doctrine. The employee has two methods available to prove odd-lot coverage, only one of which requires him to prove the unavailability of suitable work. The difficulty in this case is determining if the employee has the burden of proof on unavailability of regular, suitable work. The majority adopt the rule for

allocating the burden of proof as set out in 2 Larson Workmen's Compensation Law, § 57.61 at 10–164.95 to 1–164.114 (1982):

" * * * If the evidence of degree of obvious physical impairment, coupled with other facts such as the claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available. * * *

"The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on him to establish unavailability of work to a person in his circumstances, which normally would require a showing that he has made reasonable efforts to secure suitable employment."

The first paragraph states this general rule: An employee must show that his obvious physical impairment coupled with other factors, such as education, training or age, mandate placement in the odd-lot category. The obviously impaired employee need not show unavailability of work; the burden shifts to the employer to show that suitable light work of a regular nature is available. If the employer does not do that, then the employee prevails.

However, not all partially disabled employees will be able to make this showing. The second paragraph describes those who will not: those with a limited or specialized impairment who are *not obviously unemployable.* The corollary would not preclude those employees with specialized impairments from showing odd-lot coverage. However, they must make an additional showing, not required of the obviously un-employable employees, that suitable work is unavailable—and this ordinarily requires a showing that reasonable efforts have been made to find suitable work. Once the unavailability of work is proved by showing reasonable efforts, then the burden shifts to the employer to show that special work is in fact available. If the employer does not do that, then the employee prevails.

Thus, the odd-lot doctrine is available to those who are not obviously unemployable as well as those who are. However, the threshold showing differs: those with less obvious injuries have a greater showing to make. The essential question in this case is whether the employee met his burden of proof. Before that question can be answered, it must be determined what his burden of proof is, and to decide that requires a determination of whether he is obviously unemployable or has a specialized impairment.

This employee is a 56-year-old man with an eleventh-grade education whose entire adult life prior to his medical retirement had been devoted to physical work. He had worked a total of 19 years as a mechanic (14 of those years as a diesel mechanic with this employer) and 19 years in the oil fields. Whether we classify a mechanic as a manual laborer or as a highly skilled artisan, this employee was reasonably equipped by his experience to perform only physical labor.

The evidence was clear that the employee could no longer work as a mechanic because his injury would not allow him to do the standing, stooping, kneeling, crawling and lifting required of a mechanic. In fact, he was discharged from his position because of his medical inability to perform these tasks. The showing that the employee cannot continue in his current employment generally is not adequate to demonstrate that there is no suitable employment available for him. However, because this employee was reasonably suited by experience and training to be a mechanic only, and because all mechanic jobs require the same physical maneuverability as the position he held, in this particular case the fact that he was discharged from his current job for inability to

perform constitutes a clear showing that he could not take any other mechanic position. As to the oil-field work, it is equally apparent that he would be unable to perform the tasks required by that type of physical labor. The employee made the requisite showing that he obviously falls within the odd-lot category—he demonstrated that he was incapacitated from performing any work at any gainful occupation for which he was reasonably suited by experience and training, as required by § 27–12–405(a), W.S.1977. That is enough to meet the requirements of the law of this state. *In re Iles,* 56 Wyo. 443, 110 P.2d 826, 829 (1941); *Cardin v. Morrison-Knudsen,* Wyo., 603 P.2d 862, 864 (1979); *Gifford v. Cook-McCann Concrete, Inc.,* Wyo., 526 P.2d 1197, 1199 (1974). Professor Larson's rule, which the majority today adopts, does not require that all employees show reasonable efforts to obtain other employment to merit odd-lot coverage. Nor has this court ever so held:

> " * * * It appears that all his life he has been accustomed to do hard work. The theory of counsel for the employer appears to be that the workman must go further than to show that he cannot do any hard work; that he must also show that he cannot do light work. Of course, it would almost be impossible, in many instances, for a man educated only to do hard work, to show that at some time or other some good Samaritan might not turn up and offer him some light work which he might be able to do. The law does not require impossibilities. It is stated in 71 C.J. 1071 that 'where it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee.' In *Lunardello v. Republic Coal Co.,* 101 Mont. 94, 53 P.2d 87, 90, the court stated: 'There is no merit, however, in the suggestion that the burden was on plaintiff to prove not only that he could not work at his former occupation, but that he was totally incapacitated from obtaining re-

munerative employment of any kind. * * This we think is the proper rule. * * ' " *In re Iles,* supra, 110 P.2d at 829.

Most recently this court said:

> "Before the burden of which *In re Iles,* supra, speaks shifts to the employer, the employee must prove that he or she is so disabled that he or she will not be capable of employment in any well-known branch of the labor market. Since the evidence in this case is that Cardin is capable of light or sedentary work, we think the court below was justified in holding that the facts do not serve to make the 'odd-lot' doctrine available to this worker and the court was, therefore, justified in finding the worker not to be permanently totally disabled." *Cardin v. Morrison-Knudsen,* supra, 603 P.2d at 864.

The *Cardin* case differs from this one because there the employer's safety engineer testified there were jobs suitable for the worker, given his restriction on activity and movement. *Cardin,* supra, 603 P.2d at 864. Therefore, in *Cardin* the employee made the requisite showing which was in fact countered by the employer's evidence that special work was available. This court has constantly reiterated the proper rule:

> "The burden is upon the claimant to show that he is entitled to an award of compensation. [Citations.] Here, although there was not substantial evidence to support the order entered, claimant did present evidence of *some* disability. If that disability were attributable to the work injury and was total so far as hard or manual work was concerned but he could do light or mental work, the burden was upon the employer to show that such special work was available. [Citation.]" *Gifford v. Cook-McCann Concrete, Inc.,* supra, 526 P.2d at 1199.

The trial judge erred in deciding that the employee had failed to meet his burden of proof, and I would reverse.

The majority cite an alternate ground for affirmance: that the application for modification of the award was improper in that it failed to show

"the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud,"

as required by § 27–12–606, W.S.1977. I would point out, however, that the statutory requirement of mistake or fraud—the overreaching to which the trial judge referred—may be indicated in this case by the way this employee was led down the primrose path—retained as an employee until after the permanent-partial-disability claim had been settled, and then almost immediately summarily dismissed on the basis of his employer's admission that he was totally permanently disabled. The majority also note that there had apparently been no increase in the injury but do not address the meaning of "incapacity due solely to the injury" as used in the statute. The statutory definitions are silent and I am inclined to favor the position that, at least in the odd-lot doctrine, incapacity means injury plus inability to work at gainful employment, not simply physical injury.

"Inability to get work, traceable directly to a compensable injury, may be as effective in establishing disability as inability to perform work. * * * Even without total medical disability, the two essentials are present: wage loss, and causation of the wage loss by work-connected injury. The fact that the wage loss comes about through refusal or unavailability of employment rather than through incapacity to perform the work does not change the result." 2 Larson, supra, § 57.61 at 10–164.83 to 10–164.90.

An increase in inability to work, as evidenced by subsequent loss of employment, might well constitute an increase in incapacity in odd-lot cases.