18692

Walter SHEALY, Respondent, v. ALGERNON BLAIR, INC. and
United States Fidelity & Guaranty Company, Appellants.

(156 S. E. (2d) 646)

*Bernard Manning, Esq.,* of Columbia, *for Appellants,*

108

*Norbert A. Theodore, Esq.,* of Columbia, *for Respondent,*

August 22, 1967.

BRAILSFORD, Justice.

This is a workmen's compensation case. The appeal is by the employer from an order of the circuit court affirming the opinion and award of the South Carolina Industrial Commission, which affirmed and adopted the opinion and award of the hearing commissioner directing the payment of weekly compensation to claimant.

The employer challenges the opinion and award of the Commission upon the two-fold ground that it requires the payment of compensation without a supporting finding of fact that the claimant suffered a disability, as defined by Section 72-10, Code of 1962, and without any substantial evidence on which such a finding could be based.

Claimant, age 65, was employed by Algernon Blair, Inc., as foreman of a cement finishing crew. While at work on July 20, 1965, he fell from a low scaffold, sustaining a mild concussion and a sprained neck. He was discharged by his employer on July 30, 1965. In the meantime, according to his testimony, he had suffered periodic pain and dizziness but had lost neither time from work nor wages. He testified that he knew of no reason for his discharge, and none was assigned by his employer. The only other testimony on this point was that his discharge was for unsatisfactory service antedating and not connected with his injury.

"Disability" is defined by Section 72-10, *id.*, as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Under Section 72-152, *id.*, compensation for partial disability is based upon a percentage of the difference between the average weekly wages earned by the employee before the injury and "the average weekly wages which he is able to earn thereafter, * * *."

The Commission found that claimant's average wage at the time of his injury was $100.00 per week, but it did not declare the extent of his *incapacity,* if any, to earn such wages after the injury. Nor did it determine the average weekly wages which claimant was *able* to earn after his injury. Instead of making these essential findings, the Commission adopted the expedient of ordering the employer to pay compensation at the maximum weekly rate for total disability, taking "credit for the periods of time claimant worked and earned wages."

It is the duty of the Commission to make specific findings upon which a claimant's entitlement to compensation may rest and upon which the amount of

compensation due him may be calculated by one of the statutory formulae. We have held that awards without such specific findings do not comply with the requirements of the act and are illegal. *Dameron v. Spartan Mills,* 211 S. C. 217, 44 S. E. (2d) 465; *Poole v. E. I. du Pont de Nemours & Co.,* 227 S. C. 232, 87 S. E. (2d) 640. Only the Commission is authorized to pass upon the weight of the evidence in a workmen's compensation case, and it is proper to remand a case to it for required findings where the record contains evidence from which such findings may be made. *Drake v. Raybestos-Manhattan, Inc.,* 241 S. C. 116, 127 S. E. (2d) 288. However, a claimant has the burden of proving the facts essential to his right to compensation, and an award may not be based upon conjecture or speculation. *Coleman v. Quality Concrete Products, Inc.,* 245 S. C. 625, 142 S. E. (2d) 43; *Herndon v. Morgan Mills, Inc.,* 246 S. C. 201, 143 S. E. (2d) 376. Where the only reasonable inference from the record is that the claimant has failed to sustain this burden, it would be futile to remand the case. An award which is without support in the evidence should be reversed on appeal whether or not it is legally sufficient as to form and content.

The medical testimony does not indicate a compensable disability. Claimant's own physicians thought that because of his complaints of dizziness, he should not climb scaffolds or ladders, but that he was, in the words of the first of these witnesses, "perfectly able to work on the ground." [1] The report of the employer's medical expert recognized that Shealy was uncomfortable at times but expressed the view that he was not incapacitated.

While claimant described his symptoms of pain and discomfort rather dramatically, he did not testify that he was unable to work. He refused to so state in answer to counsel's rather leading questions, "Q. Have you been able to work since then? A. Yes, sir. I've worked a couple of different

---

[1] All of the testimony on the point is that ground level cement finishing work is available in the Columbia area where claimant lives.

days, a couple of different times." Then, after claimant had described three cement finishing jobs of short duration which he had undertaken and completed, the following question was asked and answered: "Q. Have you been able to do any work besides that since the accident? Yes, sir. I worked two days—I don't (know) the name of the company up here on—at Roosevelt Village." Claimant was then asked whether that was all he had *"done* since the accident." In response he stated that he had done a job for Hancock Buick Co. for the agreed price of $720.00, out of which he paid the cost of material and labor.

Claimant testified to a total of six or seven cement finishing jobs which he had undertaken in various capacities and completed between the date of his discharge and the date of the hearing on April 27, 1966. He applied for only two of these jobs; his services were solicited for the others. His pay rate on these jobs was not less than that he received prior to his injury. He testified that he suffered pain and discomfort in performing one of these jobs, but he did not so testify as to any of the others. None of his employers or associates testified that he complained of or exhibited any physical handicap or discomfort while at work on these jobs. In fact, a number of them testified to the contrary. One cement finisher, who engaged claimant to help him on several jobs, testified that he did not even know that claimant had been injured until he was interviewed by the employer's attorney in preparation for the hearing. Another finisher worked "side by side" with claimant for ten hours on one day and eight hours on the next, usually in a kneeling position, without hearing any complaint from him. When this witness testified that he had more offers of cement work than he could fulfill, he was asked by the commissioner why he did not send some of the offerors to see claimant. His reply was, "Well, the fact about it I didn't know that he was out of work. I haven't seen him since the last day he worked with me."

When claimant was asked on cross-examination whether he had applied for work, he replied that he did so "all the

time." However, he admitted that he had applied for only two of the six or seven jobs on which he had been employed since his discharge. He made only two other references to any effort to obtain employment. After describing his discomforting symptoms he testified, "I went out for a couple of jobs and they turned me down. As a matter of fact, when a man my age you can't get nothing to do nohow unless it a job they do for themselves." And again he stated that while working on Forest Drive, he went across the street and asked about a job with a construction company. "And the man looked at me and said, 'We don't need nobody.' " Quite clearly this meager testimony has no tendency to establish that claimant's failure to secure work in either instance resulted from any injury produced physical impairment.

The record shows that cement finishing is not claimant's only trade. He was employed as an automobile mechanic by Central Chevrolet Co., Inc., for some time prior to 1950, when he quit this employment to resume cement finishing. There is no evidence that he has sought employment at this trade since his injury.

Under the terms of the act, an award of compensation must be based upon the claimant's *"incapacity* because of injury to earn the wages which (he) was receiving at the time of injury in the same or any other employment." Section 72-10, Code of 1962. The object of the act is to relieve an injured workman from the loss or impairment of his *capacity* to earn wages. "(T)he fact that after the injury the employee has not worked and has therefore earned no wages is not in itself determinative of the extent of loss of his earning capacity." *Bowen v. Chiquola Mfg. Co.,* 238 S. C. 322, 328, 120 S. E. (2d) 99, 102. "Loss of earning capacity is the criterion. There is no recognition of the elements of pain and suffering, or of increased discomfort and difficulty in performing the work, as long as there is no diminution in earning capacity." *Keeter v. Clifton Mfg. Co.,* 225 S. C. 389, 392, 82 S. E. (2d) 520, 522.

All of the medical testimony and the evidence as to claimant's post-injury activities demonstrate his physical ability to work at ground level, albeit with occasional discomfort according to his testimony. He is not entitled to compensation unless his periods of unemployment were attributable to an injury produced limitation on, or impairment of, his capacity to work. The burden of proving causation rested upon claimant. This burden could be met only by evidence that claimant had made reasonable efforts to obtain employment and had failed because of an injury produced handicap. *Coleman v. Quality Concrete Products, Inc.,* 245 S. C. 625, 142 S. E. (2d) 43; 2 Larson, Workmen's Compensation Law, Sections 57.61, .66 (1961). In *Coleman* this court was satisfied with the diligent efforts which claimant had made to obtain employment and stated the real question to be "whether the evidence is of sufficient substance to afford a reasonable basis for the Commission concluding as a matter of fact that the employee's inability to obtain employment was due to his injury and resultant partial physical incapacity." 245 S. C. at 631, 142 S. E. (2d) at 45. We concluded that there was sufficient evidence to sustain this finding.

Unlike in *Coleman,* the efforts of this claimant to obtain employment were intermittent and lackadaisical, rather than diligent. More conclusively, there is no evidence to support an inference that an injury produced physical impairment was the cause of claimant's failure to secure employment.

For the reasons stated, so much of the judgment appealed from as sustained the award of compensation to claimant must be reversed. There has been no appeal from so much of the judgment as sustained the award of medical benefits, and that part of the award is not affected by our judgment.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.