730 S.E.2d 857

**Aletha M. JOHNSON, Claimant, Respondent,**

**v.**

**RENT–A–CENTER, INC., Employer and Sedgwick CMS, Carrier, Appellants.**

Appellate Case No.2011–190666.
No. 27145.

Supreme Court of South Carolina.

Heard May 3, 2012.

Decided July 18, 2012.

Rehearing Denied Aug. 23, 2012.

John Gabriel Coggiola of Willson Jones Carter & Baxley, of Columbia, for Appellants.

John R. Hetrick of Hetrick, Harvin & Bonds, of Walterboro, and Nelson Russell Parker, of Land Parker & Welch, of Manning, for Respondent.

Chief Justice TOAL.

Aletha M. Johnson (Employee) sustained an injury to her back while working for Rent–A–Center (Employer). Employer contends the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) erred in awarding benefits to Employee. The Appellate Panel found Employee was disabled and did not constructively refuse light duty work. We affirm.

FACTS/PROCEDURAL BACKGROUND

Employee is a single mother living with her son. Employee has a high school degree and attended two and one half years of college. Employee's employment history includes a stint as an auditor scanning boxes for UPS for approximately nine months following high school, working as a waitress for eight years and working as a correctional officer for three and one half years. She had no reported chest, neck or shoulder

injuries prior to beginning employment with Employer in September 2008.

On February 22, 2008, while moving a bedroom set from the back of a truck, Employee was struck by a dresser weighing over 200 pounds. The dresser fell on Employee when a co-worker who was assisting with the move became distracted. Employee injured her neck, shoulders and chest. Following the accident, Employee received medical treatment from Dr. Paul DeHoll, an orthopaedist authorized by Employer's insurance carrier to examine Employee. Dr. DeHoll placed Employee on work restriction and instructed her not to lift more than ten pounds or push, pull, stand, climb, walk or sit for long duration. When Employee attempted to return to work, Employer's district manager informed Employee that she could not return until she received a full release with no restrictions from Dr. DeHoll. For a number of weeks, Employer paid Employee total disability benefits. During this period, Employee obtained her certification as both a licensed Certified Nurse Assistant (CNA) and a phlebotomist.[1]

On July 15, 2008, Dr. DeHoll reported that Employee was "at maximal medical improvement" and could be "released back to work with no restrictions." Dr. DeHoll further found that Employee qualified for a "5% impairment of the whole person secondary to the cervical spine," and noted that she still complained of tingling and numbness in both hands.

After being released to full duty, Employee was offered her previous position with Employer in Manning but refused the position because she would have been paired with the same co-worker whom she faulted for the accident. Employer then offered Employee a second position in Florence, which she also refused because Employer would not offer additional compensation for the extra transportation and child care costs she would incur working so far from home. Employee then resigned from her job and sought other gainful employment.

Following her resignation, Employee worked as a housekeeper for Angelic Place Retirement Home in Sumter for several months. She then changed jobs and worked at Visiting Professionals, a home health care agency in Sumter,

---

1. A phlebotomist is a professional trained to draw blood for tests or transfusions.

performing cooking and cleaning duties for one month. In October 2008, Employee began working as a CNA with Kershaw County Medical Center. She continued working as a CNA until her supervisors became aware of her workers' compensation award. The Kershaw County Medical Center then informed Employee that, despite her previous full duty release letter from Dr. DeHoll, she could not return to work unless she was reexamined and submitted a new letter.

On September 25, 2009, Employee and Employer entered into a consent order allowing Employee to be reexamined by Dr. DeHoll.[2] On October 20, 2009, after the examination, Dr. DeHoll noted:

"[T]he Patient still had a small disc herniation as per her previous MRI. Essentially there is no change [,] [and] if patient's symptoms have resolved[,] I see no need for further action."

On October 28, 2009, Employee's attorney scheduled an independent medical evaluation with Dr. Don Johnson. Employee testified that the numbness and tingling in her hands, which Dr. DeHoll noted in July 2008, had increased in intensity. Based on his examination, Dr. Johnson diagnosed Employee as suffering cervical pathology with large disc herniation. Dr. Johnson opined, "I think this patient should be placed on lifting restrictions and should not return to work as a CNA [, but] ... can work as a phlebotomist...."

On May 26, 2010, Employee filed a Form 50 hearing request with the Workers' Compensation Commission. On June 3, 2010, the Single Commissioner ordered Dr. Randall G. Drye to examine Employee. On March 22, 2010, Dr. Drye stated that Employee "presents with long-standing chronic symptoms of neck pain and possible paresthesias," and ordered a repeat cervical MRI. After examining the data, Dr. Drye concluded, "I [ ] feel she should adhere to permanent lifting restrictions of no greater than 15 pounds. She should not push or pull more than 50 pounds and only then on an occasional basis." However, he agreed with Dr. Johnson that Employee was "well suited to work as a phlebotomist."

---

2. Neither the Record nor the briefs shed light on the events that took place between Employee leaving her job at Kershaw County Medical Center and Employee entering into a consent order with Employer.

After examining the medical evidence and testimony, the Single Commissioner awarded Employee temporary total disability benefits, finding the full duty release of Dr. DeHoll dated July 15, 2008, was "stale," and the medical evidence supported Dr. Johnson and Dr. Drye's conclusions. The Single Commissioner further concluded that Employer did not offer Employee work within the restrictions set forth by Dr. Johnson and Dr. Drye. Moreover, he found Employee applied to numerous phlebotomist positions, but that many of these positions combined CNA and phlebotomist responsibilities, rendering the jobs unsuitable for Employee. Employer appealed the Single Commissioner's decision to the Appellate Panel, and the Appellate Panel affirmed. Employer appealed to the court of appeals, and this Court certified the case for review pursuant to Rule 204(b), SCACR.

ISSUES

I. Whether the Appellate Panel erred in finding Employee was disabled under section 42–1–120 of the South Carolina Code.

II. Whether the Appellate Panel erred in finding Employee did not constructively refuse light duty by voluntarily resigning from her position with Employer.

STANDARD OF REVIEW

■■ The South Carolina Administrative Procedure Act (APA) governs appeals from the decisions of an administrative agency. S.C.Code Ann. § 1–23–380 (Supp.2011); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the APA, an appellate court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(5). If the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," a reviewing court may reverse or modify. *Id.* Substantial evidence is not a mere scintilla of evidence, nor evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency

reached. *Pratt v. Morris Roofing, Inc.*, 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).

ANALYSIS

## I. Disability under Section 42–1–120

Employer claims that Employee is not disabled, as defined under section 42–1–120 of the South Carolina Code, and does not qualify for temporary total disability benefits. *See* S.C.Code Ann. § 42–1–120 (1976). We disagree.

■ Section 42–1–120 defines "disability" as "incapacity because of injury to earn wages, which the employee was receiving at the time of injury in the same or any other employment." In *Shealy v. Algernon Blair, Inc.*, 250 S.C. 106, 113, 156 S.E.2d 646, 649–50 (1967), the Court found that a worker was not disabled under section 42–1–120 because his efforts to obtain work were "intermittent and lackadaisical" and medical evidence, as well as evidence of his post-injury activities, demonstrated that he could perform his job. *Shealy* places the burden on a claimant to show that (1) the claimant "failed [to obtain employment] because of an injury produced handicap," and (2) the claimant "made reasonable efforts to obtain employment." *Id.*

■ Employer argues that under section 42–1–120 and *Shealy*, Employee was not disabled because she could still work as a phlebotomist. Under the first prong of *Shealy*, the test is whether Employee *failed to obtain employment* as a result of injuries she suffered at work, not that she could work as a phlebotomist in theory. While both Dr. Johnson and Dr. Drye noted that Employee could work as a phlebotomist, both doctors also placed lifting restrictions on Employee, and Dr. Johnson additionally opined that Employee could not work as a CNA because of her injuries.[3] The Single Commissioner then found that phlebotomist and CNA duties are often combined, rendering even a phlebotomist position unsuitable for Employ-

---

3. Dr. Johnson's recommendation is supported by documents in the Record explaining the physical demands of a CNA, which could involve "turning, lifting, [and] transferring" patients. Moreover, Employee could not return to her job as a CNA at Kershaw County Medical Center because she was required to obtain a full duty release without lifting restrictions.

ee.  The Single Commissioner found Employee's testimony concerning the overlapping nature of CNA and phlebotomist duties credible, and that, while Employee worked at Kershaw County Medical Center as a CNA, she also performed phlebotomist work for five months.  *See Pinckney v. Warren*, 344 S.C. 382, 393, 544 S.E.2d 620, 627 (2001) (Generally, a trial judge is in the best position to judge the credibility of a witness).

Employer, challenges this finding, countering that jobs with exclusively phlebotomist duties do hypothetically exist.  The Record, however, does not demonstrate that these jobs are available in Employee's geographical area.[4]  Consequently, we hold substantial evidence supports the Single Commissioner's findings that reasonable minds can reach the conclusion that Employee's injuries prevent her from obtaining employment as a phlebotomist because phlebotomist and CNA duties are often coterminous.  *Pratt*, 357 S.C. at 622, 594 S.E.2d at 274.  We stress that our opinion is a narrow one, limited to the facts of this case.  Where it is demonstrated that there are phlebotomist jobs without CNA duties within a reasonable geographical area, and Employee chooses not to apply for them, the result would likely be different.

Moreover, Employee has satisfied the second prong of *Shealy*, 250 S.C. at 113, 156 S.E.2d at 649–50.  Employee testified in court that she submitted applications to McLeod Medical Center, Clarendon Memorial Hospital, Colonial Life Center, Amnesty, and Providence Baptist in Columbia for phlebotomist positions, but did not receive any offers.[5]  Again, the Single Commissioner found Employee's testimony credible.  In addition, Employee's employment record both before and after her injuries does not demonstrate a history of

---

4.  If these jobs do exist, we believe it would not be enough just to show that a phlebotomist job description formally does not mention CNA or lifting duties, but Employer would need to also show that Employee is not expected to informally perform such duties.

5.  Employer complains that Employee did not "offer any evidence, including applications, rejections letters, or witnesses, to establish she was denied work as a phlebotomist...." However, when Employer cross-examined Employee on this issue, Employee offered to obtain copies of her applications, but Employer never followed up on this offer.

malingering. To the contrary, Employer originally refused to allow Employee to return to work without a full clearance from Dr. DeHoll, necessitating her receipt of temporary total disability benefits. Rather than sit idly by, Employee returned to school and received her CNA and phlebotomist certifications. After Employee resigned her position with Employer, she immediately sought and worked at three other jobs before Kershaw County Medical Center suspended her over concerns she could not perform the duties of a CNA due to her injuries. As Employee testified, "It's not the fact that I don't want to work, there's no work out there for me." Therefore, we find substantial evidence establishes that Employee exerted reasonable efforts to seek employment as a phlebotomist.

Thus, we hold Employee is disabled pursuant to section 42–1–120 of the South Carolina Code.

## II. Constructive Refusal of Light Duty

Employer contends Employee constructively refused light duty work that would accommodate her physical restrictions by voluntarily resigning from her employment without giving Employer the opportunity to offer her such work. We disagree.

Employer cites no precedent in which this Court recognized that a constructive refusal of light duty could defeat a claim for temporary total disability. Assuming for the sake of analysis that such a defense is viable, we find the Record does not support Employer's argument.

It is undisputed that Employer never actually offered light duty work to Employee. Rather, Employer offered Employee her previous position where she would be paired with the co-worker whom she faulted for the accident, and alternatively, offered her a position necessitating expensive travel on Employee's part. Employee refused both offers and resigned. Employer relies on this voluntary resignation to argue Employee constructively refused light duty work. However, these facts do not support Employer's position. To begin with, Employee had a full release from Dr. DeHoll at the time she resigned so the question of light duty work was not even an issue, and Employee left for other reasons. Moreover, it is

highly speculative to presume Employer would offer Employee light duty work had she remained with Employer. *See State v. Hernandez,* 382 S.C. 620, 625, 677 S.E.2d 603, 605 (2009) (finding mere speculation insufficient). The Record, in fact, points the other way. When Employee was first placed on lifting restrictions by Dr. DeHoll, rather than accommodate Employee, Employer refused to let Employee return to work at all. Employee also testified that sometime after she resigned her position in Manning, she subsequently went back to Employer to ask for work, but rather than offer light duty work, Employer turned Employee away on the ground that there was no open position.

Thus, we hold Employer did not offer Employee light duty work, and Employee did not constructively refuse such work.

CONCLUSION

For the foregoing reasons, we find Employee qualifies as disabled under section 42–1–120 of the South Carolina Code, and she did not constructively refuse light duty work. Accordingly, we affirm the Appellate Panel.

**AFFIRMED.**

PLEICONES, KITTREDGE, HEARN, JJ., and Acting Justice E.C. BURNETT, III, concur.