741 S.E.2d 770

**Susan DAVIS, Employee, Respondent,**

v.

**UNIHEALTH POST ACUTE CARE, Employer, and Phoenix Insurance Company/Travelers Insurance Company, Carrier, Appellants.**

Appellate Case No. 2011–197634.

No. 5098.

Court of Appeals of South Carolina.

Heard Dec. 12, 2012.

Decided March 13, 2013.

---

evidence that SLED failed to provide the proper training for conducting the interception.

542

R. Daniel Addison, Hedrick Gardner Kincheloe & Garofalo, of Columbia, for Appellants.

Michael J. O'Sullivan, Richardson Plowden & Robinson, PA, of Columbia, and Aynsley Rogers, Mickle & Bass, LLC, of Rock Hill, for Respondent.

FEW, C.J.

UniHealth Post Acute Care and its workers' compensation insurance carrier appeal the workers' compensation commission's decision awarding Susan Davis temporary total disability compensation.[1] UniHealth argues the commission erred when it (1) determined Davis did not constructively refuse

---

1. We refer to the appellants collectively as UniHealth.

suitable employment; and (2) reinstated temporary compensation that UniHealth had previously agreed to pay. We affirm.

## I. Facts and Procedural History

Davis worked as a certified nursing assistant at a UniHealth nursing home. In October 2008, Davis injured her lower back at work. UniHealth acknowledged the injury was compensable and provided her medical treatment. In October 2009, UniHealth assigned Davis to light duty employment in the laundry room to accommodate work restrictions imposed by her physicians. Davis and UniHealth consented to an order under which UniHealth voluntarily began paying Davis temporary partial disability compensation on October 13, 2009.

Davis's job in the laundry room consisted of folding and hanging clothes. Her shift ran from 6:00 a.m. until 2:00 p.m. She and other workers would take only one break—from 7:20 until 7:35—while the laundry was in the washing machines.

On the night of April 4, 2010, Davis slept only an hour or two due to back pain and a stomach virus. She continued having back pain the following morning, and she took a muscle relaxer fifteen minutes before her shift began. She typically did not take muscle relaxers before work because they made her feel sleepy. At 7:35 a.m., Davis's supervisor saw her sitting in a chair with her eyes closed. He observed Davis for approximately twenty-five seconds and heard her snore several times. He concluded she was sleeping and reported what he saw. The next day, UniHealth fired Davis for sleeping on the job. UniHealth's policy is that sleeping on the job is cause for immediate termination of employment.

UniHealth stopped paying temporary partial disability compensation on the basis that by sleeping at work, Davis constructively refused the light duty employment UniHealth provided her. Davis filed a claim for temporary total disability compensation. After a hearing, a single commissioner found that Davis had fallen asleep at work for a period of twenty to sixty seconds. The commissioner found, however, that Davis did not refuse employment by falling asleep under these circumstances. Therefore, the commissioner concluded Davis was entitled to have her temporary compensation reinstated. Because UniHealth was no longer providing her alternative

employment, the commissioner ordered UniHealth to pay Davis temporary total disability compensation from the date UniHealth fired her "through the present and continuing ... until terminated in accordance with the applicable law." An appellate panel affirmed.

## II. Constructive Refusal of Employment

UniHealth argues the commission erred in finding Davis did not constructively refuse employment. UniHealth contends the concept of constructive refusal arises under section 42–9–190 of the South Carolina Code (1985), which provides, "If an injured employee refuses employment procured for him suitable to his capacity and approved by the Commission he shall not be entitled to any compensation at any time during the continuance of such refusal." The commission found that Davis's

> sleeping for one minute or less, whether on a morning break or not, does not rise to the level of constructive refusal of employment. This is particularly true given Ms. Davis' difficulty sleeping on the night of April 4, 2010 was partially due to pain in her low back, a compensable body part.

We question whether section 42–9–190 allows an employer to deny an employee temporary disability compensation for *constructively* refusing employment. *See Johnson v. Rent–A– Ctr., Inc.*, 398 S.C. 595, 603, 730 S.E.2d 857, 861 (2012) (stating there is "no precedent ... that a constructive refusal of light duty could defeat a claim for temporary total disability"). Even if it does, we disagree with UniHealth's argument. The question of whether an employee refused employment under section 42–9–190, whether constructive or not, is a question of fact for the commission to decide. We find substantial evidence to support the commission's finding.

Davis testified that on the night of April 4, 2010, she slept only one or two hours due to back pain and a stomach virus. She also testified she took a muscle relaxer before work to alleviate back pain, and she did not typically take muscle relaxers before work because they made her feel sleepy. Finally, Davis testified her break lasted until 7:35, which is when her supervisor saw her asleep. This evidence shows that Davis fell asleep due to a combination of exhaustion and

medication, or that she took a nap while on break. It does not show that her sleeping amounts to a refusal to work. We affirm the commission's finding that Davis did not refuse employment.

### III. Temporary Total Disability Compensation

■ UniHealth argues the commission erred in ordering it to pay Davis temporary total disability compensation. UniHealth contends neither the evidence in the record nor the commission's findings of fact support a conclusion that Davis is disabled. In making this argument, UniHealth asks us to ignore the fact that it voluntarily agreed Davis was disabled and signed a consent order requiring that UniHealth pay Davis disability compensation. When UniHealth fired her, the only question brought before the commission was whether she refused employment by sleeping. If the commission had found she did, she would not have been entitled to any compensation. § 42–9–190. When the commission found she did not refuse employment, however, she retained the status UniHealth agreed to in the consent order—a disabled employee entitled to compensation. While UniHealth was providing Davis light duty employment, it was able to pay her partial compensation instead of total. After UniHealth terminated that employment, its own agreement that she was disabled and its refusal to provide alternative employment required UniHealth to pay her temporary total compensation until the payments could be properly terminated. The necessary consequence of the commission's finding that Davis did not refuse employment, therefore, combined with UniHealth's agreement she was disabled and its refusal to provide her employment, was that UniHealth was obligated to provide total disability compensation. The commission simply imposed this necessary consequence, which continues until the commission allows UniHealth to terminate compensation. *See* S.C.Code Ann. § 42–9–260(F) (Supp.2012) (requiring the commission to adopt regulations for terminating compensation that "provide for an evidentiary hearing and commission approval prior to termination" except in circumstances not present here); 8 S.C.Code Ann. Regs. 67–506 (2012) (providing procedures for termination more than 150 days after the injury is reported); *see also Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 310,

454 S.E.2d 320, 322 (1995) (holding former employee whose work restrictions were never lifted remained temporarily disabled under Regulation 67–504 and was entitled to have temporary total disability compensation reinstated); *Cranford v. Hutchinson Constr.*, 399 S.C. 65, 76, 731 S.E.2d 303, 309 (Ct.App.2012) (reversing commission for denying temporary total disability compensation to employee fired from light duty employment during period of disability).

The panel ordered UniHealth to pay temporary total disability compensation "until terminated in accordance with the applicable law." If Davis is not disabled, it is incumbent upon UniHealth to institute termination proceedings and argue that point to the commission.

## IV. The Commission's Order on Davis's Motion for Sanctions

When UniHealth fired Davis, it terminated the temporary partial disability compensation it had begun paying voluntarily in October 2009. Davis made a motion for sanctions. In an interlocutory order dated July 30, 2010, a single commissioner determined UniHealth terminated compensation without following the commission's procedures for doing so. The commissioner's order reinstated Davis's temporary partial disability compensation "until the Commission determines otherwise or by agreement of the parties." The commissioner issued the order before the commission ruled Davis did not refuse employment. An appellate panel affirmed the July 30 order on April 18, 2011.

UniHealth argues that because Davis never appealed the April 18 order, it was the law of the case, and therefore it prevented the commission from later finding Davis was entitled to temporary total disability compensation. However, because the order was not a final decision of the commission, it was not an appealable order. *See* S.C.Code Ann. § 1–23–380 (Supp.2012) (limiting appellate review to "a final decision" of an agency). The only question decided in the order was whether UniHealth should be penalized for terminating Davis's temporary partial disability compensation without following required procedures. The order did not address whether Davis was entitled to total compensation, as opposed to partial compensation. Moreover, the order expressly re-

served to the commission the power to reach a different conclusion later. Finally, UniHealth *did* appeal the April 18 order. This court dismissed the appeal, finding the order was not final, and therefore unappealable. UniHealth did not appeal *that* order.

## V. Conclusion

The decision of the workers' compensation commission is **AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.